UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>  v.<br><br>DARNEKO YATES,<br><br>   Defendant. | Case No. 23-cr-00318-AMO-1<br><br>**ORDER DENYING MOTIONS TO DISMISS AND GRANTING MOTION TO SUPPRESS**<br><br>Re: Dkt. Nos. 19, 21, 22 |

  Before the Court are Defendant Darneko Yates's motions to dismiss under the Second Amendment and Commerce Clause, and Yates's motion to suppress. The motions were heard before this Court on December 11, 2023. Having read the papers filed by the parties and carefully considered the arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **DENIES** the motions to dismiss and **GRANTS** the motion to suppress.

**BACKGROUND**

  On September 21, 2023, Yates was indicted for violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm and ammunition. ECF 1. The charge arose out of a warrantless search on August 27, 2023, while Yates was on parole. ECF 24-4 (Declaration of Officer Gilbert Troche) ("Troche Decl.") ¶¶ 14-17; ECF 24-1 (Declaration of Richard Ewenstein) ("Ewenstein Decl."), Ex. 2 at DY-000020.

  On August 27, 2023, at approximately 10:56 a.m., San Pablo Police Officer Gilbert Troche was on patrol and observed a white Honda Accord with darkly tinted windows drive past him in

1  the opposite direction. Troche Decl. ¶ 4; *see* ECF 20 (Ex. A, Troche Dashcam).[1]  Officer Troche

2  believed the tint on the Accord's windows exceeded that allowed by California law and decided to

3  conduct a traffic stop. Troche Decl. ¶ 4.  Officer Troche completed a U-turn and began to follow

4  the Accord. *Id.* ¶ 5.  Officer Troche followed the Accord for two blocks before activating his

5  overhead emergency lights, including a solid forward-facing red light. *Id.* ¶ 6; ECF 33 ("Troche

6  Supp. Decl.") ¶¶ 8-9; Ex. H.  He followed the Accord with the emergency lights activated for

7  approximately a block and a half before the Accord yielded.  Troche Decl. ¶¶ 6-8; Troche Supp.

8  Decl. ¶¶ 8-9.[2]  Yates had started backing into a parking spot in front of a residence, where Officer

9  Troche later learned Yates's mother lives, and stopped the Accord with its front wheels on the

10 curb across the street from the residence when Officer Troche instructed him to stop and turn off

11 the car. Ex. A, Troche Dashcam at 0:45-1:10; Ex. B, Troche Bodycam 0:28-45; ECF 28-3 (Ex. F,

12 Police Report) at 4.

13   Just before stepping out of his patrol car, Officer Troche called the license plate for the

14 Accord into dispatch and requested a backup officer.[3]  Ex. B, Troche Bodycam[4] at :08-22; *see* Ex.

15 F, Police Report at 4.  Officer Troche was concerned that since the driver did not yield

16 immediately after he activated the emergency lights, that the driver might attempt to flee, conceal

17 weapons or drugs, or attack once stopped.  Ex. F, Police Report at 4.

18   Standing next to his patrol vehicle, Officer Troche asked Yates to roll down the window.

19 Ex. B, Troche Bodycam at 1:05.  Although Officer Troche's standard practice is to approach

20 stopped vehicles from the driver's side, he approached the Accord on the passenger side out of

---

[1] The dashcam on Officer Troche's patrol vehicle began recording when Officer Troche activated the emergency equipment and automatically records 30 seconds prior to that event. Troche Supp. Decl. ¶ 5; *see* ECF 28-3, Ex. G at 8-9, 12.

[2] Troche initially believed the Accord failed to yield for three and a half blocks but after viewing his patrol vehicle's dashcam video, he realized that he activated his emergency lights at the second intersection of Lake Street and 10th Street, a block and a half later than he initially believed. Troche Supp. Decl. ¶¶ 7-9.

[3] Officer Troche is heard to say "I'll take one," which read with Office Troche's report, the Court understands as his asking for backup.

[4] Officer Troche's bodycam began recording approximately 30 seconds before he told Mr. Yates to stop his car. *See* Ex. B, Troche Bodycam.

United States District Court
Northern District of California

concern for his safety based on the darkly tinted windows, failure to yield, and parking partly on the curb.  Troche Decl. ¶¶ 10-13.  Officer Troche asked Yates why he continued driving after Officer Troche turned on the patrol car lights.  Ex. B, Troche Bodycam at 1:13.  Yates responded that he did not see the patrol car until he got to the stop sign on Lake and 10th Street and that he lived at the house in front of which he was parking.  *Id.* at 1:16.  Officer Troche told Yates that he stopped him because he could barely see through the tinted car windows.  *Id.* at 1:25-30.

Yates handed Officer Troche his driver's license.  *Id.* at 1:40.  While holding Yates's license, and before calling it in to dispatch, Officer Troche asked Yates if he was on probation or parole, and Yates responded that he was on parole.  *Id.* at 1:50; Troche Decl. ¶ 14.  Officer Troche asked what he was on parole for, and Yates responded "carjacking."  Troche Bodycam at 1:55; Troche Decl. ¶ 14.  Officer Troche asked dispatch to conduct a record check to confirm Yates's parole status.  Ex. F, Police Report at 4; Ex. B, Troche Bodycam at 2:00.  It is Officer Troche's standard practice to ask drivers stopped for traffic violations whether they are on probation or parole.  Troche Decl. ¶ 15.

After waiting for approximately one minute, Officer Troche told Yates to give dispatch a second and asked Yates if there was anything in the vehicle Officer Troche should be worried about.  Ex. B, Troche Bodycam at 3:00-3:09.  Approximately five minutes after Officer Troche stopped Yates and as soon as Officer Kolosov, his backup officer, arrived, Officer Troche told Yates that because he is on parole, the officers were "going to do a quick check."  *Id.* at 5:25; *see* Ex. C, Kolosov Bodycam at 0:19-:50.  It was Officer Troche's standard practice to conduct a parole search "when contacting parolees convicted of violent offenses."  Troche Decl. ¶ 17.  The officers removed Yates from the car and searched him.  Troche Bodycam at 5:45-6:55.

Two young children, Yates's niece and nephew, were in the car's backseat.  Ex. F, Police Report at 4-5.  Officer Troche asked Yates's niece to get out of the vehicle through the rear driver's side door and then asked Yates's nephew to get out through the rear passenger side door.  *Id.* at 4; Ex. B, Troche Bodycam at 7:00-7:20.  Officer Troche noticed a bulge in the young boy's pants and pulled a gun from the boy's pants waistband.  Ex. B, Troche Bodycam at 7:40-7:55; Ex. F, Police Report at 5.  Yates was charged with unlawfully possessing the gun.

3

**DISCUSSION**

Yates moves to dismiss the indictment, arguing that it is unconstitutional because it violates the Second Amendment as well as the Commerce Clause. Yates also moves to suppress the evidence seized because the search violated the Fourth Amendment. As the motions to dismiss address the indictment's validity, the Court takes them up before considering the motion to suppress.

### A.   Motion to Dismiss Under the Second Amendment

Yates is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moves to dismiss the indictment, arguing that it cannot stand in light of the Supreme Court's recent Second Amendment decision, *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). ECF 22. Yates asserts that the Ninth Circuit's precedent finding that Section 922(g)(1) does not violate the Second Amendment, *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), is clearly irreconcilable with *Bruen*. *Id.* at 11-14. However, every district court in the circuit to decide this issue has concluded that *Vongxay* and its progeny are not clearly irreconcilable with *Bruen*. *See United States v. Chatman*, No. 14-CR-00552-CRB-1, 2023 WL 3509699, at *1 (N.D. Cal. May 16, 2023) (gathering cases); *see also United States v. Page*, No. CR 23-06-H-BMM, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (finding that *Vongxay* remains binding authority post-*Bruen* and that Section 922(g)(1) is constitutional); *United States v. Still*, No. 2:22-CR-00074-RMP, 2023 WL 8482856, at *3-4 (E.D. Wash. Dec. 7, 2023) (rejecting facial and as-applied challenge to the constitutionality of section 922(g)(1)); *United States v. Hindman*, No. 3:23-CR-05062-DGE, 2023 WL 8020699, at *5 (W.D. Wash. Nov. 20, 2023) (finding that *Bruen*'s reasoning is not clearly irreconcilable with the reasoning in *Heller* and *Vongxay*, and concluding that section 922(g)(1) is constitutional); *United States v. Broadbent*, No. 2:19-CR-00155-DJC, 2023 WL 6796468, at *3 (E.D. Cal. Oct. 13, 2023) (same); *United States v. Gamble*, No. 222-CR-00267, 2023 WL 6460665, at *3-5 (D. Nev. Oct. 4, 2023) (holding that *Vongxay* is consistent with *Bruen* and remains controlling law, thus prosecution under Section 922(g)(1) is constitutional); *United States v. Hunt*, No. 3:18-CR-00475-IM-1, 2023 WL 6439410, at *1 (D. Or. Oct. 3, 2023) (same); *Walker v. Bonta*, No. 20-CV-00031-DMS-AGS, 2023 WL

1    6131086, at *5 (S.D. Cal. Sept. 19, 2023) (same); *United States v. Filoial*, No. 321-CR-00052,

2    2023 WL 5836689, at *4 (D. Alaska Aug. 25, 2023), *report and recommendation adopted sub*

3    *nom. United States v. Filoialii*, No. 3:21-CR-00052-JMK, 2023 WL 5832153 (D. Alaska Sept. 8,

4    2023) (same); *United States v. Robinson*, No. 2:22-CR-00212-TL, 2023 WL 5634712, at *5 (W.D.

5    Wash. Aug. 31, 2023) (same).  The Court finds these decisions persuasive and concludes that

6    *Vongxay* remains controlling.

7          In addition to his facial challenge, Yates argues that Section 922(g)(1) is unconstitutional

8    as applied to his convictions.  ECF 22 at 23-24.  This challenge also fails, as *Vongxay* expressly

9    rejected this sort of as-applied challenge.  *See Vongxay*, 594 F.3d at 1118; *see also Hindman*, 2023

10   WL 8020699, at *5 ("Neither Congress in drafting § 922(g)(1), nor the *Bruen* Court in

11   emphasizing the 'presumptively lawful' nature of felon-in-possession laws, differentiated between

12   types or ages of felonies.  More importantly, neither mandated, much less suggested, such an

13   analysis be performed.  For the same reasons [defendant's] facial challenge is not convincing, his

14   as-applied challenge is likewise rejected."); *see also United States v. Hill*, 629 F. Supp. 3d 1027,

15   1031 (S.D. Cal. 2022) ("Accordingly, even under an expansive reading of the Second

16   Amendment, the felon-in-possession law would nonetheless be constitutional as applied to

17   Defendant given his prior felony convictions."); *United States v. Roberts*, No.

18   323CR00057TMBKFR1, 2024 WL 50889, at *8-10 (D. Alaska Jan. 4, 2024) (rejecting as-applied

19   challenge and upholding the constitutionality of Section 922(g)(1))  Therefore, the Court DENIES

20   the motion to dismiss under the Second Amendment.

21   **B.     Motion to Dismiss Under the Commerce Clause**

22         Yates additionally moves to dismiss the indictment as unconstitutional under the

23   Commerce Clause, similarly arguing that Ninth Circuit precedent upholding the constitutionality

24   of the felon firearm possession statute is "clearly irreconcilable" with Supreme Court decisions.

25   ECF 21 at 2.  However, the Ninth Circuit has explicitly considered the Supreme Court

26   jurisprudence Yates raises and concluded that the "minimal nexus" requirement in *Scarborough v.*

27   *United States,* 431 U.S. 563 (1977) remains binding precedent.  *United States v. Alderman*, 565

28   F.3d 641, 644-45 (9th Cir. 2009) (considering *United States v. Lopez*, 514 U.S. 549 (1995) and

*United States v. Morrison*, 529 U.S. 598 (2000)); *see also United States v. Davis*, 242 F.3d 1162, 1163 (9th Cir. 2001) (concluding that "Congress lawfully exercised its authority to regulate interstate commerce . . . in enacting § 922(g)(1)"). The Court is bound by Ninth Circuit precedent. *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (citations and internal quotation marks omitted) ("Under our law of the circuit doctrine, a published decision of this court constitutes binding authority which must be followed unless and until overruled by a body competent to do so."). Accordingly, the Court applies Ninth Circuit precedent and determines that the indictment is not unconstitutional under the Commerce Clause. The Court DENIES the motion to dismiss on this basis.

**C.     Motion to Suppress**

Yates also moves to suppress all evidence seized from the search Officer Troche conducted on August 27, 2023, asserting that the search violated his Fourth Amendment rights. ECF 19 ("Motion") at 1. Yates argues that Officer Troche unconstitutionally prolonged the traffic stop by asking whether Yates was on probation or parole.[5] *Id.* at 5. The Court agrees.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When determining whether someone's Fourth Amendment rights have been violated, "the ultimate touchstone . . . is 'reasonableness.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). Even an initial seizure based on probable cause "can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citation omitted). "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). Specifically, a seizure for a traffic violation justifies a police officer's investigation of

---

[5] For the first time in his Reply, Yates challenges Officer Troche's justification for conducting the traffic stop. ECF 28 at 6-7. Because it is generally improper to raise new arguments in a reply brief, the Court does not consider this argument. *See Tovar v. United States Postal Service*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking from the record new information contained in a reply brief).

6

that violation, and the duration of an officer's inquiries "is determined by the seizure's 'mission'– to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* at 354.

In *Rodriguez*, the Supreme Court explained that a traffic stop's "mission" includes "ordinary inquiries incident to" the stop to help ensure the safe operation of vehicles, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (quoting *Caballes*, 543 U.S. at 408). While officers may take such "negligibly burdensome precautions," they may not take actions "aimed at detect[ing] evidence of ordinary criminal wrongdoing." *Id.* at 355-56 (citation and internal quotation marks omitted). Accordingly, an officer may prolong a permissible traffic stop only if the additional time is "(1) part of the stop's mission or (2) supported by independent reasonable suspicion." *United States v. Landeros*, 913 F.3d 862, 867-68 (9th Cir. 2019); *see also Rodriguez*, 575 U.S. at 355-56.

Here, Officer Troche pulled Yates over because he suspected that Yates's windows were illegally tinted. After Yates handed Officer Troche his drivers' license, Officer Troche asked him whether he was on parole or probation. Troche Decl. ¶ 14. When Yates answered affirmatively, Officer Troche asked what he was on parole for and then asked dispatch to run a record check to confirm Yates's parole status. *Id.*; Ex. F, Police Report at 4. Yates argues that the inquiry into his parole status was unrelated to the mission of the traffic stop.

The Government contends that recent Ninth Circuit authority calls for the Court to conclude that Officer Troche's inquiry into Yates's probation or parole status was a "negligibly burdensome precaution" to conduct the stop safely. ECF 24 ("Response") at 9 (citing *United States v. Hylton*, 30 F.4th 842, 849 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 393 (2022)). Such a reading ignores that *Hylton* distinguished between running a criminal history check, which has an "officer safety justification," and a "felon registration check," which the Ninth Circuit found impermissible in *United States v. Evans*, 786 F.3d 779 (9th Cir. 2015), because the latter is aimed at detecting criminal wrongdoing, which is prohibited by *Rodriguez*. *Hylton*, 30 F.4th at 847-48. The Government also argues that the Ninth Circuit "expanded on *Hylton*" by authorizing officers

7

to ask "basic questions," such as whether an individual has identification, has been arrested, or has weapons in the vehicle, as part of the "mission" of a traffic stop. Response at 9-11 (discussing *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023)). However, *Taylor* reaffirms the Supreme Court's holding in *Rodriguez* that officers may conduct "ordinary inquiries" to ensure vehicles are operating safely. Notably, *Taylor* does not permit investigating "ordinary criminal wrongdoing" during traffic stops which *Rodriguez* explicitly prohibits. *See Rodriguez*, 575 U.S. at 356.[6]

Like the felon registration check in *Evans*, inquiries about whether someone has completed the incarceration portion of their sentence but remains under supervision does not relate to officer safety. Indeed, it is noteworthy that before contacting dispatch to run a criminal background check, Officer Troche first asked Yates about his probation and parole status. Troche Bodycam at 1:51. Officer Troche's report nowhere references officer safety and is clear that he contacted dispatch to confirm Yates's parole status, and not for a criminal background check, or any other matter within the mission of the traffic stop. For these reasons, like other judges in this district, the Court concludes that inquiring about a driver's parole or probation status improperly went beyond the mission of the traffic stop and prolonged the stop. *See, e.g.*, *United States v. Taylor*, 634 F. Supp. 3d 690, 698 (N.D. Cal. 2022); *United States v. Odom*, 588 F. Supp. 3d 1032, 1039 (N.D. Cal. 2022); *United States v. Gould*, No. 21-CR-00475-JSW-1, 2022 WL 3226974, at *4 (N.D. Cal. Aug. 10, 2022).[7]

The inquiry into Yates's parole status transformed what would have been a routine traffic stop and a possible citation for illegally tinted windows into an inquiry "aimed at detect[ing]

---

[6] The Government invites the Court to forecast the trajectory of the Ninth Circuit's jurisprudence. However, prognostication is not within the Court's purview. Instead, the Court is bound to apply the law as it exists today and at the time Officer Troche seized and searched Yates. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a body competent to do so").

[7] Pending before the Ninth Circuit is a case which asks the Circuit to resolve whether asking about probation or parole status unreasonably prolongs a traffic stop. *See United States v. Ramirez*, No. 22-50045, ECF 26 at 16-22 (Government's brief).

8

evidence of ordinary criminal wrongdoing." *Evans*, 786 F.3d at 786 (citations and internal quotation marks omitted). Therefore, absent reasonable suspicion of criminal activity, the parole and probation inquiries violated Yates's Fourth Amendment rights.

Reasonable suspicion of criminal activity "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *Landeros*, 913 F.3d at 868 (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (emphasis in original)). Particularized suspicion is based on "the totality of the circumstances" and "must arouse a reasonable suspicion that *the particular person being stopped* has committed or is about to commit a crime." *Montero-Camargo*, 208 F.3d at 1129 (emphasis in original) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981), *Terry v. Ohio*, 392 U.S. 1, 21 n.18 (1968)).

The Government submits that Officer Troche possessed reasonable suspicion to believe Yates was engaged in criminal activity because Yates had tinted windows, parked partially on the sidewalk when pulled over, and failed to immediately yield for Officer Troche. Response at 13. Considering the totality of the circumstances, these facts do not amount to reasonable suspicion that Yates had committed or was about to commit a crime. *See Montero-Camargo*, 207 F.3d at 1129.

As regards the tinted windows, the Government offers no case law to support the proposition that tinted windows contribute to a reasonable suspicion of criminality, and the Court declines to find that they did here.

The Court next considers Yates's parking partially on the curb. The Court is not persuaded that parking with the front wheel on the curb contributed to reasonable suspicion here. Officer Troche opined that drivers who park illegally often intend to set up a quick exit from their vehicle and flee on foot. Troche Decl. ¶ 12. However, as Yates explained to Officer Troche, and as confirmed by Officer Troche's bodycam and dashcam footage, Yates was backing into a parking spot and stopped the Accord with its tire on the curb when Officer Troche instructed him to stop and turn off the car. Ex. A, Troche Dashcam at 0:45-1:10; Ex. B, Troche Bodycam 0:30, 1:12-30, 2:26-33. Because Yates stopped the Accord on the curb at Officer Troche's request, this does not

contribute to particularized reasonable suspicion that Yates was involved in criminal activity. Moreover, the Government provides no legal support or analysis as to how parking with a front wheel partly on the curb supports a particularized reasonable suspicion that Yates was about to or had committed a crime.

That leaves only Yates's failure to yield immediately. While "evasive actions" may contribute to a finding of reasonable suspicion, *see United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000), the Government provides no legal authority that briefly failing to yield on its own substantiates a particularized suspicion of criminal wrongdoing. In each of the cases the Government cites, courts relied on additional facts beyond failing to yield to support a finding of reasonable suspicion. *See id.* (finding reasonable suspicion where defendant took a "threatening posture by accelerating towards [the officer] and his car," and had been observed by officers looking at a possibly stolen car and leaving the scene in an "expeditious manner"); *United States v. Pearson*, No. CR 17-00051-BRO, 2017 WL 1628397, at *8 (C.D. Cal. Apr. 28, 2017) (finding reasonable suspicion of criminal activity where, among other factors, the car had passed several safe spots to pull over, officer had to use his emergency equipment, including a siren, three times before the car stopped, the defendant appeared nervous, and officer observed the driver rolling a marijuana cigarette); *United States v. Crowley*, No. CR. S-07-0282 GGH, 2008 WL 686619, at *4-5 (E.D. Cal. Mar. 12, 2008) (finding reasonable suspicion where officer saw defendant drinking what appeared to be an alcoholic beverage, saw "possibly furtive movements" to dispose of bottles, and officer had to activate his sirens several times). Here, Yates yielded a block and a half – approximately 20 seconds – after Officer Troche activated his emergency lights.[8] *See* ECF 28-3 (Ex. H) at 23; Ex. A, Troche Dashcam at 0:31-1:04. That fact on its own is insufficient to show reasonable suspicion. *See United States v. Jones*, 438 F. Supp. 3d 1039, 1057 (N.D. Cal. 2020)

---

[8] After Yates filed his reply to the motion to suppress, Officer Troche submitted a supplemental declaration clarifying that he did not activate his emergency lights until the second intersection of Lake Street at 10th Street. Supp. Troche Decl. ¶¶ 8-9. Notably, Officer Troche does not include any of the language that he used in the original declaration that "a failure to yield over a distance as long as several blocks is consistent with the driver" attempting to flee or hide possible contraband or weapons. *See* Troche Decl. ¶ 11. *Cf.* Supp. Troche Decl. ¶¶ 8-9.

10

("Without anything more specific to indicate that defendants had engaged in criminal conduct, . . . 'evasive' driving does not provide a particularized and objective basis to permit the officers to prolong a traffic stop by investigating criminal conduct unrelated to the traffic stop.").

Because the Court concludes that Officer Troche lacked reasonable suspicion that Yates was engaged in criminal activity, his questions to Yates's about his parole or probation status unlawfully prolonged Yates's stop in violation of his Fourth Amendment rights. The evidence obtained in the search that followed that constitutional violation must be suppressed.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Yates's motions to dismiss and **GRANTS** the motion to suppress. The Court **HEREBY SETS** a status conference for **January 29, 2024**, and **DIRECTS** the parties to meet and confer to determine if an exclusion of time between the date of this Order and January 29, 2024, is appropriate.

**IT IS SO ORDERED.**

Dated: January 5, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**